**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------x

MIGUEL GONZALEZ,

Petitioner,

-against-

NEW YORK STATE DEPT. OF CORRECTIONS COMMUNITY SUPERVISION,

Respondent.

---------------------------------------x

MEMORANDUM DECISION AND ORDER

21 Civ. 2914 (GBD) (KHP)

**GEORGE B. DANIELS, United States District Judge:**

On April 5, 2021, *pro se* Petitioner Miguel Gonzalez ("Gonzalez") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (*See* Pet. for Writ of Habeas Corpus, ECF No. 1, "Pet.", at 1.) On July 26, 2023, Magistrate Judge Katharine H. Parker issued a Report and Recommendation advising that Gonzalez's petition be denied, (Rep. & Rec., ECF No. 55, ("Report") at 1), and Gonzalez filed timely objections on August 8, 2023. (Obj. to Report, ECF No. 57, "Obj.".) Having reviewed Magistrate Judge Parker's Report, as well as Gonzalez's objections, this Court OVERRULES Gonzalez's objections and ADOPTS the Report in full.

## I. FACTUAL BACKGROUND[1]

Petitioner Gonzalez and his co-defendant, Jose Beniquez, were leaders of the Aztec Tribe Chapter of the Latin Kings Gang (the "Gang"). (Pet. at 17.) On September 12, 2009, Gonzalez, Beniquez, and several other Gang members approached a public housing complex, seeking

[1] This Court incorporates by reference the background set forth in the Report and recounts here only those facts necessary for resolution of the issues before it. The facts are primarily drawn from the Government's brief, supplemental brief, and accompanying materials submitted in opposition to Gonzalez's direct appeal in the Appellate Division. (*See* Resp. to Pet. For Writ of Habeas Corpus, ECF No. 19, "Response".) The recitation of facts set forth in the state appellate briefs are supported by detailed citations to the record, including the transcript of the trial and subsequent sentencing. (*See, e.g.*, State Court Record ("S.R."), ECF No. 19-2–19-6.)

revenge against another gang that allegedly robbed a Latin King Gang member's son. (Resp. to Pet. For Writ of Habeas Corpus, ECF No. 19-1, "Memo Response", at 1.)

At the time, 21-year-old Glenn Wright was outside of a housing complex, washing the windows outside of his grandmother's residence.[2] The Gang mistook Glenn for their target and stabbed him in the throat twice before fleeing the scene. (*Id.* at 2.) Glenn's father, Peter Wright, saw through the window from inside of the residence that Glenn was bleeding from his neck and the Gang members were running away. (*Id.* at 7.) Peter chased after the Gang and eventually caught up with Gonzalez. (*Id.*) Meanwhile, a nearby police officer witnessed the chase between Peter and Gonzalez and intervened. (*Id.*) Gonzalez then told the officer that Peter had a gun. (*Id.*) After finding no weapon, the officer let Peter go and brought Gonzalez to the precinct for questioning as a witness. (*Id.*) Glenn Wright was pronounced dead later that night in the hospital. (*Id.*) After questioning, Gonzalez and other individuals were released, and only Joel Herrera was arrested as the knife wielding attacker. (Report at 3.)

About a year later, the police received a tip regarding other people who were involved in the stabbing, specifically Jason Quijano, who was ultimately arrested. (*Id.*) After a few months in pretrial detention, Quijano chose to sign a cooperation agreement with the prosecution on April 11, 2013. (*Id.*) Pursuant to the cooperation agreement, Quijano informed prosecutors that both Gonzalez and Beniquez were involved in the stabbing. (*Id.;* State Court Record (or "S.R."), ECF 19-6, Appellate Br. for Respondent, at 43.) Both Gonzalez and Beniquez were subsequently arrested by police. (Report at 4.)

---

[2] Following previous filings, this Court refers to Glenn Wright, and his father, Peter Wright, by their first names to avoid confusion. (*See e.g.*, Report at 2.)

## II. PROCEDURAL HISTORY

On July 18, 2014, a New York County Grand Jury charged Gonzalez and Beniquez with second-degree murder for the death of Glenn Wright. (S.R., ECF No. 19-5, Grand Jury Indictment, at 28.) Both defendants proceeded with a joint jury trial on November 9, 2015. (Report at 4.) On December 24, 2015, a jury found Gonzalez guilty of manslaughter in the first degree (New York Penal Law ("NYPL") § 125.20(1)), assault in the first degree (NYPL § 120.10(1)), gang assault in the first degree (NYPL § 120.07), and conspiracy in the fourth degree (NYPL § 105.10(1)). The jury acquitted Gonzalez of second-degree murder and second-degree conspiracy charges. (Report at 17.)

Before sentencing, Gonzalez moved to set aside the verdict pursuant to New York Criminal Practice Law ("CPL") § 330.30 on January 22, 2016. (S.R., ECF No. 19-3, Pet.'s CPL § 330.30 Mot., at 1.) The state trial judge denied the motion on December 15, 2016. (S.R., ECF No. 19-4, Decision on CPL § 330.30 Mot., at 12.) On January 25, 2017, the New York Supreme Court sentenced Gonzalez to 15 years of incarceration and five years of post-release supervision on the manslaughter and assault counts, and one to three years of incarceration on the conspiracy count, ordering the sentences to run concurrently. (S.R., ECF No. 19-5, Unif. Sentence & Commitment, at 20.)

On July 31, 2018, counsel for Gonzalez and Beniquez filed direct appeals of their convictions and sentences with the New York State Supreme Court, Appellate Division, First Department ("Appellate Division"). (Report at 9.) On January 15, 2019, Gonzalez submitted a supplemental *pro se* brief in support of his appeal. (*Id.*) On October 1, 2019, the Appellate Division denied Gonzalez's and Beniquez's appeals. *People v. Beniquez*, 110 N.Y.S.3d 688, 689

(N.Y. App. Div. 2019). On December 31, 2019, the Court of Appeals of New York denied leave to appeal that determination. *People v. Gonzalez*, 139 N.E.3d 790 (N.Y. 2019).

On April 5, 2021, Gonzalez filed the instant habeas petition. (Pet.) On December 7, 2021, the Government answered the Petition. (Response at 1.) On January 10, 2022, Gonzalez filed a reply in the form of a Traverse. (Traverse for Pet., ECF No. 25., "Traverse.")

Despite Gonzalez's pending federal proceedings, on February 9, 2022, Gonzalez filed a CPL § 440.10 motion in New York Supreme Court challenging his conviction on three grounds: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; and (3) denial of due process. (*See* CPL § 440.10 Mot., ECF No. 30-1, at 1.) On August 1, 2022, while being housed at Sing Sing Correctional Facility, Gonzalez filed a letter informing the Court of his pending CPL § 440.10 motion. (440.10 Mot. Letter, ECF No. 26.) Magistrate Judge Katherine H. Parker construed the letter as a motion to hold the Petition in abeyance pending resolution of the CPL § 440.10 motion and granted that application. (Op. and Order on Mot. to Stay, ECF No. 40.)

On September 1, 2022, the Supreme Court of the State of New York denied Gonzalez's CPL 440.10 motion, holding that Gonzalez's claims were procedurally barred. (CPL § 440.10 Decision, ECF No. 33-2, at 3.) On May 25, 2023, the Appellate Division denied Gonzalez's application for leave to appeal the denial of his CPL § 440.10 motion. (*See* Resp't Status Report, ECF No. 53, at 1.) After Gonzalez was denied leave to appeal, Magistrate Judge Parker lifted the stay placed on Gonzalez's habeas petition on July 6, 2023. (Order, ECF No. 54.)

On July 6, 2023, Magistrate Judge Parker submitted a Report and Recommendation, recommending that Gonzalez's petition for writ of habeas corpus be denied in full. (Report at 1.) Gonzalez filed timely objections on August 08, 2023. (Obj. at 1.) The case was reassigned to this

Court on December 19, 2025. (ECF Entry on 12/19/2025.) Gonzalez filed a letter inquiring about the status of his pending habeas petition on May 5, 2025. (Pet. Status Update Letter, ECF No. 74.)

## III. STANDARD OF REVIEW

This Court may "accept, reject or modify, in whole or in part, the findings and recommendations set forth in a magistrate judge's report." 28 U.S.C. § 636(b)(1). This Court "must review *de novo* the portions of a magistrate judge's report to which a party properly objects." 28 U.S.C. § 636(b)(1)(C). However, "[i]f a party fails to properly object to the R&R, the district judge reviews the R&R only for clear error." *Nambiar v. Cent. Orthopedic Grp. LLC*, 158 F.4th 349, 359 (2d Cir. 2025).

A proper objection must be timely and specific. *Id.* For a party to properly preserve an objection, a party must "object to the finding or recommendation on that issue with sufficient specificity so as to reasonably alert the district court of the true ground for the objection." *Id.* "Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under Fed. R. Civ. P. 72(b)[.]" *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002).

Here, Gonzalez objects to the entirety of the Report based on Magistrate Judge Parker's characterization of certain witness testimony and alleged juror misconduct. (Obj. at 3.) Accordingly, this Court reviews the entirety of the Report *de novo*. Upon *de novo* review, "the [district] judge, on application, will consider the record which has been developed before the magistrate and make his own determination on the basis of that record, without being bound to adopt the findings and conclusions of the magistrate." *United States v. Raddatz*, 447 U.S. 667, 675 (1980).

## IV. APPLICABLE LAW

Federal courts may not grant a writ of habeas corpus regarding claims adjudicated on the merits in a state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)).

"Clearly established law" is restricted to the Supreme Court's jurisprudence. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Relief is warranted when a petitioner establishes that the state court ruling "was so lacking in justification [such] that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *White v. Woodall*, 572 U.S. 415, 420-21, (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Moreover, "[t]his Court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).

Gonzalez is bringing his claims *pro se*. "It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest."" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Burgos v. Hopkins*, 14 F.2d 787, 790 (2d Cir. 1994)). *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). A *pro se* petitioner must exhaust his claims in the state court process before bringing a habeas petition in federal court. *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) (citing 28 U.S.C. § 2254(b)(1)).

## IV. MAGISTRATE JUDGE PARKER DID NOT ERR IN THE REPORT

Gonzalez asserts four grounds for habeas relief: (1) prosecutorial misconduct; (2) juror misconduct; (3) insufficient evidence; and (4) excessive and vindictive sentence.[3] (Pet. at 3.) Magistrate Judge Parker properly determined that three out of four of Gonzalez's claims are procedurally barred, and all of Gonzalez's claims fail on the merits. (*See generally* Report.)

### A. Gonzalez's Prosecutorial Misconduct Claim Fails.

Gonzalez argues that the prosecutor in his state trial committed misconduct by making two false statements during summation – that Gonzalez gave police officers a fake phone number, and Joel Herrera, the main perpetrator, called Gonzalez from jail after his arrest. (Pet. at 6.) Gonzalez also argues that the state court's trial transcript of the Government's summation changed the word "and" to "not," allegedly giving "the testimony of prosecutor's summation an entire new direction that jurors didn't hear." (*Id.*) Gonzalez raised this claim on direct appeal, and that claim was denied by the Appellate Division as both procedurally barred and meritless on October 1, 2019. (S.R., ECF No. 19-6, at 104, (Appellate Division Judgment).); *See also Beniquez,* 110 N.Y.S. 3d at 688.

Gonzalez's prosecutorial misconduct claim is procedurally barred. Under New York law, "appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings[,]" known as contemporaneous objections. *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011); *see also* N.Y. Crim.

---

[3] Gonzalez raises two other grounds in the beginning of his Petition: (5) trial transcript reconstruction; and (6) ineffective assistance of counsel. (Pet. at 2.) Rule 2(c) requires that a "[habeas] petition must 'specify all the grounds for relief available to the petitioner' and 'state the facts supporting each ground.'" *Mayle v. Felix*, 545 U.S. 644, 655 (2005). Moreover, "vague and conclusory claims are not sufficient bases for habeas corpus relief." *Jones v. Poole*, No. 06-CV-7172-NRB, 2007 WL 2456646 , at *11 (S.D.N.Y. Aug. 21, 2007). Here, Gonzalez seemingly abandons these two arguments by failing to provide additional evidence or facts to support these claims in his Petition. This Court therefore is not required to review the merits of those arguments. Even on the merits, however, this Court agrees with Magistrate Judge Parker's conclusion that both claims are procedurally defaulted and meritless. (Report at 22, 28.)

Proc. L. § 470.05(2). Further, a general objection is not sufficient because to preserve a claim, a defendant's objection must "specifically focus on the alleged error." *Downs,* 657 F.3d at 103 (quoting *Whitley v. Ercole*, 642 F.3d 279, 286 (2d Cir. 2011)).

Even if Gonzalez had timely objected to the prosecutor's statements, he failed to explain why the conduct was objectionable.[4] (S.R., ECF No. 19-4, People's Trial Summation, at 32.) This general objection is insufficient to satisfy the requirements of the contemporaneous objection rule. *Downs,* 657 F.3d at 103 (quoting *Whitley*, 642 F.3d at 286). Accordingly, this Court is prevented from reviewing Gonzalez's claims unless he can (1) show cause for his failure to preserve the claim, and that prejudice resulted from it, or (2) demonstrate that failure to consider the claims will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750 (1991); *Wainwright v. Sykes*, 433 U.S. 72 (1977).

To show "cause" for a procedural default, Gonzalez must show an "objective factor external to the defense that impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479 (1986). Gonzalez argues that ineffective assistance of counsel was the cause for his procedural default of this claim. However, because this claim was not presented on his direct appeal, this claim cannot be used to establish cause. *Id.* ("[T]he exhaustion doctrine generally requires that an ineffective assistance of counsel claim be presented to the state courts as an independent claim before it may be used to establish cause for procedural default in federal habeas proceedings"). Gonzalez also fails to show that ineffective assistance of counsel resulted in prejudice towards him. To show "prejudice," Gonzalez has the burden of showing that the errors in his trial created an "actual and substantial disadvantage, infecting his

[4] There seems to be a discrepancy on whether or not Gonzalez timely objected. (*Compare* Report at 15–16 *with* Memo Response at 22.) The timeliness of Gonzalez's objection is not dispositive, however, as Gonzalez failed to make a sufficiently specific objection. *See People v. Tonge*, 93 N.Y.2d 838, 839 (1999) (noting that a "general objection" is insufficient to preserve the claim; rather the defendant must "specify the basis for" the objection.).

entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Gonzalez does not identify in what way the prosecutor's statements were constitutional errors that created a substantial disadvantage or affected the outcome of the proceedings. Gonzalez's mere speculation is insufficient to constitute a valid showing of prejudice. *Id.*

Second, Gonzalez has not shown that a failure to consider his claims will result in a miscarriage of justice. A federal habeas court may grant a writ of habeas corpus, even in the absence of showing cause and prejudice for procedural default, when there is a constitutional violation that has probably resulted in the conviction of an innocent person. *Murray*, 477 U.S. at 496. A petitioner must present new evidence that demonstrates "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

On June 28, 2022, Gonzalez submitted an affidavit from Herrera which stated that Gonzalez "had absolutely nothing to do with" the attack. (Herrera Letter, ECF No. 26.) Even though this affidavit constitutes new evidence that was not included in the trial, affidavits are generally disfavored as evidence because the affiants' statements are not subject to cross-examination or an opportunity to make credibility determinations. *Herrera v. Collins*, 506 U.S. 390, 417 (1993). Moreover, this statement was obtained seven years after the trial date. Herrera provides no further evidence to substantiate his statement and "[n]o satisfactory explanation...as to why the affiant[] waited until the 11th-hour. . ." to write the letter. *Id.* at 417–18. This Court thus cannot conclude, based on Herrera's affidavit alone, that no reasonable juror would have convicted Gonzalez. Although Gonzalez discusses potentially obtaining new evidence in the future, such as video surveillance, (Obj. at 5), Gonzalez does not provide any new evidence at this

time that would support the notion that a miscarriage of justice occurred or that Petitioner was likely innocent. Accordingly, this Court is barred from reviewing his claims.

The prosecutorial misconduct claim also fails on its merits. Prosecutorial misconduct claims can prevail only when the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). The Second Circuit applies a three-factor test in determining the existence of prejudice by considering: "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the [misconduct]." *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990) (quoting *United States v. Modica*, 663 F.2d 1173, 1181 (2d Cir. 1981)) (per curiam).

Here, even if the prosecution's statement during summations that Gonzalez provided the incorrect phone number to the police was error, the trial court provided a curative instruction to the jury stating that there was no evidence to support this assertion. Further, the prosecution's references to the jury about a phone call between Herrera and Gonzalez were cured when the trial transcript was updated to accurately reflect that there was no evidence that Herrera called Gonzalez from jail. (*See* S.R., ECF No. 19-5, Reconstruction of Record Hearing, at 12) ("There's no hint of any evidence in the case of any calls by Herrera to Gonzalez or Falquez that day…").) Although Gonzalez argues that these remarks prejudiced his trial because the prosecution's statements "put him at the scene of the crime," (Report at 19), other prosecutorial evidence, including Quijano's testimony, supported that conclusion even without the remarks. (*Id.* at 3.) Accordingly, there is no basis to find that any prejudice resulted from these remarks or that the remarks rendered Gonzalez's trial a denial of due process.

**B. Gonzalez's Juror Misconduct Claim Fails.**

A juror assigned to Gonzalez's state trial, Juror Number Eight, was overheard in the bathroom by Gonzalez's relatives making disparaging comments about Gonzalez and Beniquez and presuming their guilt. (Pet. at 7.) In response, the trial court removed and replaced this individual from the jury. (Report at 20; S.R., ECF No. 19-8, Juror Removal Transcript, at 284.) Nonetheless, Gonzalez argues that the trial court did not adequately investigate whether the other jurors were biased as a result of the overheard remark. (Pet. at 7.) Gonzalez raised this issue on direct appeal, (S.R., ECF No. 19-5, Supp. Pro Se Appellant Br., at 128), and the claim was denied by the Appellate Division as both procedurally barred and meritless. *Beniquez*, 110 N.Y.S.3d at 689.

Gonzalez's juror misconduct claim is procedurally barred here because Gonzalez failed to make a sufficiently specific contemporaneous objection. Although Gonzalez objected to the inappropriate remark by Juror Number Eight, he did not object to the jury hearing the comments, nor did he ask the Court for any further relief. *See People v. Nettles*, 931 N.Y.S.2d 16 (2011) (defendant failed to preserve juror misconduct claim where counsel raised no complaints about the scope of the court's inquiry of the jurors and never asked the court to pose any additional questions). Moreover, for similar reasons stated above, Gonzalez does not fit into the exceptions carved out for procedurally barred claims. He does not show cause for the failure to preserve his claim. He also does not include any evidence that other jurors *may* have heard Juror Number Eight's comments resulting in a miscarriage of justice. *Id.*

Gonzalez's juror misconduct claim also fails on its merits. The Sixth Amendment states that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." U.S. Const. Amend. VI. Due Process "does not require a new trial every

time a juror has been placed in a potentially compromising situation," *Smith v. Phillips*, 455 U.S. 209, 217 (1982), but rather requires "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences." *Id.* Further, a "petitioner must show 'actual prejudice' flowing from the alleged error." *Bibbins v. Dalsheim*, 21 F.3d 13, 16 (2d Cir. 1994) (citation omitted). A petitioner must make a showing that the alleged conduct had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (citation omitted).

Here, Gonzalez offers no evidence that any other jurors were in the vicinity of Juror Number Eight when the comments were made, or that any other jurors were influenced by such comments. Consequently, any argument of juror misconduct having an "injurious and substantial effect" on the jury's verdict is speculative. Gonzalez's speculative allegations, unaccompanied by evidence substantiating Gonzalez's claims, do not give rise to a "substantial and injurious effect" as necessary for a juror misconduct claim. *See Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) ("the proper delicate balance between the federal courts and the States is upset…" when "…habeas relief [is given] on the basis of little more than speculation with slight support").

**C. Gonzalez's Legal Insufficiency Claim Fails.**

At the end of Gonzalez's state trial, the defense moved for a trial order of dismissal on the grounds that the People had adduced legally insufficient evidence. (S.R., ECF 19-9 at Order of Dismissal Transcript, at 380.) Gonzalez argued that the evidence did not adequately prove that Gonzalez had intent to kill, an element required of Gonzalez's Murder in the Second Degree and Conspiracy in the Second Degree charges. Gonzalez also raised this claim on his direct appeal, (S.R., ECF No. 19-5, Br. for Defendant-Appellant, at 87), in his CPL § 440.10 motion (CPL § 440.10 Mot., at 4), and raises it again in his habeas petition (Pet. at 9.).

Because the jury acquitted Gonzalez of the Second Degree Murder and Conspiracy in the Second Degree charges, the issue of intent to kill was irrelevant for Gonzalez's remaining convictions for Manslaughter in the First Degree, Assault in the First Degree, and Gang Assault in the First Degree. Accordingly, the New York Appellate Division and Supreme Court of the State of New York found this claim to be both procedurally barred and meritless. And because the state court rejected Gonzalez's legal insufficiency claims on state law grounds that are independent of federal question, *Coleman*, 501 U.S. at 729, this Court is barred from habeas review. Moreover, Gonzalez has not shown cause for the default and prejudice, nor has he shown that a failure to consider these claims would result in a fundamental miscarriage of justice. *Id.* at 750.

Gonzalez's evidentiary sufficiency claim also fails on its merits. A petitioner challenging the sufficiency of the evidence supporting a state-court conviction "faces a high bar in federal habeas proceedings[.]" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[A] state court decision rejecting a sufficiency challenge may not be overturned on federal habeas review unless the decision was 'objectively unreasonable.'" *Parker v. Matthews*, 567 U.S. 38, 43 (2012). Thus, "the only question under *Jackson* is whether [the jury's finding] was so insupportable as to fall below the threshold of bare rationality." *Coleman,* 566 U.S. at 656.

Here, Gonzalez refers to witness and co-defendant testimony, such as Joel Herrera and Alex Ruiz, as proof of his lack of involvement in the offense conduct. (Obj. at 7.) Gonzalez also calls into question the credibility of witness Jason Quijano, in which the prosecution largely relied on to implicate Gonzalez. (*Id.* at 2; Traverse at 13.) This Court, however, must defer to the jury's

credibility assessment of Quijano's testimony. *See Maldonado v. Scully*, 86 F.3d 32, 36 (2d Cir. 1996) (finding that "evidence...is sufficient if 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[.]'" (citation omitted)). Here, the jury found that Quijano's testimony, which was corroborated by police testimony, was sufficiently credible to render a conviction. This Court is not inclined to disturb the jury's findings.

Gonzalez also fails to show how the evidence was insufficient to prove the elements of his convicted charges: Manslaughter in the First Degree (Count II), Assault in the First Degree (Count III), Gang Assault in the First Degree (Count IV), and Conspiracy in the Fourth Degree (Count V). (Unif. and Sentence Commitment.)[5] Counts II-IV include an essential element of intent to cause harm beyond a reasonable doubt. NYPL § 125.20; NYPL § 120.10; NYPL § 120.07. The remaining count, Count V, requires intent to be engaged in or cause the performance of a felony. NYPL § 105.10.

Based on the evidence at trial, a reasonable jury could have found that the essential element of intent to cause bodily injury beyond a reasonable doubt. Gonzalez was present at the meeting in which the attack was planned, witnessed a knife being handed to Herrera to carry out the attack, and joined the members who carried out the attack. The jury had a basis to reasonably infer that Gonzalez knew the victim would be seriously injured.[6]

---

[5] Count II requires "intent to cause serious physical injury to another person, [and] he causes the death of such person or of a third person." NYPL § 125.20. Count III requires "intent to cause serious physical injury to another person, [and] he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." NYPL § 120.10. Count IV requires "intent to cause serious physical injury to another person and when aided by two or more other persons actually present, he causes serious physical injury to such person or to a third person." NYPL § 120.07. Count V requires "[a] class B or class C felony be performed, [and] he or she agrees with one or more persons to engage in or cause the performance of such conduct." NYPL § 105.10.

[6] It is also likely that the jury could have reasonably inferred that the intent to be engaged in or cause the performance of a felony: neither party disputes that Gonzalez was over eighteen at the time of the attack and that the crime is a felony. Moreover, because Glenn Wright died as a result of this attack, the remaining elements of Count II are

Accordingly, after viewing the evidence in the light most favorable to the prosecution, as this Court must at this stage, *Jackson,* 443 U.S. at 319, a rational trier of fact could reasonably have found the essential elements of these crimes of conviction beyond a reasonable doubt. Gonzalez's challenge to the legal sufficiency of the evidence fails on the merits.

**D. Gonzalez's Excessive and Vindictive Sentence Claim Fails.**

Gonzalez was offered a lighter ten-year sentence during plea negotiations. He argues that his ultimate sentence of fifteen years imprisonment and five years of supervised release was both excessive and vindictive retaliation for his decision to exercise his Sixth Amendment right to a jury trial. (Pet. at 11.) Gonzalez raised both arguments on direct appeal, *Beniquez*, 110 N.Y.S.3d at 689, and the Appellate Division dismissed the claims as meritless.

Gonzalez's sentence is not excessive. The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (citations omitted). Further, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law," *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citations omitted). Here, Gonzalez's sentence is within the sentence prescribed by New York state law: Count II-IV are Class B violent felonies in which the sentencing term shall not exceed twenty-five years, (NYPL § 70.00(b)), and Count V is a Class E nonviolent felony in which sentencing shall not exceed four years, (NYPL § 70.00(e)).

Gonzalez's sentence is also not vindictive. "The mere fact that the trial court, following conviction, imposed a high sentence does not, in and of itself, establish 'actual vindictiveness.'" *Archie v. Strack*, 378 F.Supp.2d 195, 200 (W.D.N.Y. 2005) (*see Naranjo v. Filion*, 2003 WL 1900867, at *10 (S.D.N.Y. Apr. 16, 2003). "A sentence is unconstitutionally vindictive if it

---

satisfied. As the attack was carried out with a knife, the deadly weapon element of Count III is satisfied. As Gonzalez was aided by other members of his Gang in the attack, the remaining elements of Count IV are satisfied.

imposes greater punishment because the defendant exercised a constitutional right, such as the right to a jury trial." *Webb v. LaClair*, 2014 WL 4953559 at *9 (S.D.N.Y. Sept. 30, 2014) (quoting *Izaguirre v. Lee*, 865 F.Supp.2d 551, 572 (E.D.N.Y 2012) (citation omitted). Where the circumstances do not give rise to a presumption of vindictiveness, the defendant must establish "actual vindictiveness." *Id.*; *see also Alabama v. Smith*, 490 U.S. 794, 799 (1989) ("Where there is no such reasonable likelihood, the burden of proving actual vindictiveness when no presumption of vindictiveness applies").

Gonzalez fails to show actual vindictiveness. *Webb*, at *9. His claim rests solely on the fact that he was offered and rejected a lighter sentence during plea negotiations than the one he was ultimately given. That fact alone does not support the notion of a vindictive sentence, and Magistrate Judge Parker properly found that courts in this Circuit "routinely reject" vindictive sentencing claims based solely on a lower sentence being offered during plea negotiations. *See Porter v. Martuscello*, 2018 WL 8895807, at *17 (S.D.N.Y. Aug. 10, 2018), *report and recommendation adopted*, 2019 WL 2537415 (S.D.N.Y. June 20, 2019).

## V. CONCLUSION

Gonzalez does not assert adequate grounds to set aside his conviction and sentence pursuant to 28 U.S.C. § 2254. His objections to the Report and Recommendation are OVERRULED. Magistrate Judge Parker's Report and Recommendation is ADOPTED in full.

Gonzalez's petition for a writ of habeas corpus is DENIED. The Clerk of Court is directed to close the case accordingly and mail a copy of this decision to Petitioner.

Dated: August 4, 2026
New York, New York

**SO ORDERED.**

George B. Daniels

GEORGE B. DANIELS
United States District Judge